IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CHRISTOPHER LESNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 7201 |
| v. | ) | |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) | Maria Valdez |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff John Christopher Lesner's claims for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Lesner's motion for summary judgment [Doc. No. 19] is denied.

## BACKGROUND

### I.     PROCEDURAL HISTORY

On February 27, 2010, Lesner filed claims for both Disability Insurance Benefits and Supplemental Security Income, alleging disability since May 22, 2009 due to seizure, schizophrenia, anxiety attacks, obsessive-compulsive disorder, and mitrovalve of the heart. The claim was denied initially and upon reconsideration,

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 14, 2011. Claimant personally appeared and testified at the hearing and was represented by counsel. Plaintiff's mother Marianne Lesner and vocational expert Natalie Maurin also testified.

On November 22, 2011, the ALJ denied Lesner's claims for both Disability Insurance Benefits and Supplemental Security Income, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.    FACTUAL BACKGROUND[2]

### A.    <u>Background</u>

Claimant was born on May 24, 1982 and was twenty-nine years old at the time of the ALJ hearing. He graduated high school but had to repeat his senior year and was in special education courses. Plaintiff testified that he has auditory and visual hallucinations, and sometimes he feels like his face is falling off. He believes people are staring at him and compulsively stares into a mirror to find flaws in his appearance. He wore sunglasses and a hat to work, because they were like a mask and made him feel safer. Lesner has tried to invent a magnetic bulletproof vest, and he has built suits of armor for a superhero, which he wears in the woods. He reported that his well-being is improved when he keeps busy with a hobby or with

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

the computer, because it lessens his problematic thoughts and delusions. He is able to prepare meals, clean, do laundry, and mow the lawn.

Lesner takes Clonazepam, Buspirone SR, Zoloft, and Caalder for his mental health impairments. He testified that he needs his mother to monitor his medication intake because he will forget. He does not have insurance and sees a doctor very infrequently. The record shows that he had monthly doctor visits in 2007 and fewer visits in 2008.

Lesner often loses his keys and lists of things to do that his mother gives him. He does not remember to shower and can go a month without taking one unless reminded to do so. Lesner stated that sometimes he cannot sleep for days, and other times he will sleep all day; he estimates that he sleeps all day eight times a month.

Plaintiff generally lasts only three or four months at a job and was fired from his most recent job making acrylic dentures after only three weeks because he could not remember measurements. At another job, on a GM assembly line, he was fired for missing twelve days of work in three months. He was also written up at that job for walking away from a boss, who was trying to give him instructions. Lesner testified that he sometimes has difficulty dealing with men, and also dealing with supervisors or following instructions. At another job, in a library, Lesner hid in the restroom or locker room almost the entire day because he believed everyone was staring at him.

Lesner lives with his parents, who both work full time. Marianne Lesner, Plaintiff's mother, testified at the hearing out of Plaintiff's presence. She stated that

Lesner is very forgetful. She claimed that he often misses work because he is afraid to be seen, because he believes when he talks to people that his face jumps or moves, and that people are looking at him and talking about him. She testified that Lesner stays up at night and sleeps during the day. Marianne stated that Lesner lives in his own reality, even building a suit out of scrap metal because he wants to be a bounty hunter.

### B. Medical Evidence

#### 1. Dr. Miguel

Plaintiff began seeing Dr. George Miguel, a psychiatrist, in late 2006 and followed up approximately once every six months. Dr. Miguel diagnosed Lesner with schizoaffective disorder 295.70 and anxiety disorder 300.00, with a Global Assessment of Functioning ("GAF") score of 40 to 50, suggesting serious impairments in social, occupational or school functioning. There was a one-year gap in treatment by Dr. Miguel, from November 2008 to December 2009, without any emergency room visits or serious problems reported in the interim. Lesner reported to Dr. Miguel for a six-month follow-up visit in June 2010, at which he stated he had a new symptom of auditory hallucinations, which he claimed did not bother him. In December 2010, Dr. Miguel noted that Lesner experienced magical thinking and had grandiose, delusional thoughts. Lesner was prescribed Haldol at this visit, but he apparently had quit taking the medication by his next visit in May 2011.

At the May visit, Lesner reported that he worked for about a month before being let go and expressed frustration that there was not much work available. Dr.

Miguel recommended that Lesner return to school. He also continued Lesner on a regimen of Klonopin, Zoloft, and Wellbutrin and recommended a return visit in six months. Lesner returned to Dr. Miguel in five months, accompanied by his mother, reporting that he was applying for disability. He claimed to experience auditory hallucinations, with people talking back and forth and calling his name; he denied any command-type hallucinations.

Dr. Miguel completed a Mental Residual Functional Capacity ("RFC") questionnaire on October 13, 2011. He reiterated that he saw Lesner every six months for twenty to thirty minutes at a time and that Plaintiff was functional and stable with medication, which had no side effects. Nevertheless, Dr. Miguel listed Lesner's prognosis as poor. His clinical findings were that Lesner was withdrawn and isolated, exhibiting self-injurious behavior, depression, and auditory hallucinations. On the form's checklist asking for signs and symptoms, Dr. Miguel checked off a number of additional symptoms including paranoid thinking, recurrent obsessions, seclusiveness, preoccupation with the belief that he had a serious disease, and oddities of thought.

In the section related to abilities and aptitudes to do skilled and semi-skilled work, Dr. Miguel found Lesner was unable to meet competitive standards for understanding, remembering, and carrying out detailed instructions; interacting appropriately with the general public; maintaining socially appropriate behavior; and traveling in an unfamiliar place. Lesner was seriously limited but not precluded in setting realistic goals or making plans independent of others and using

public transportation. Dr. Miguel's supported his serious limitations with the following clinical findings: withdrawn/isolative; low self-esteem/body dysmorphic issue; and psychosis/depression.

Dr. Miguel concluded that, in relation to unskilled work, Lesner was unable to meet competitive standards for maintaining regular attendance within normal tolerances and completing a normal workday and workweek without interruptions from psychologically based symptoms. Dr. Miguel anticipated that Lesner would be absent from work more than four days per month as a result of his impairments or treatment.

The doctor also found Lesner to be seriously limited in the areas of remembering work-like procedures, sustaining an ordinary routine without special supervision, working in proximity to others without distraction, performing at a consistent pace without an unreasonable number of rest periods, and getting along with co-workers without unduly distracting them or exhibiting behavior extremes. The page with the clinical findings supporting Dr. Miguel's limitations on unskilled work was not part of the record. (*See* R. 345-46.)

### 2. *Dr. Brauer*

Lesner was examined for approximately an hour on April 6, 2009 by John Brauer, Psy.D., a state agency reviewer. He arrived early after driving himself to the appointment and was appropriately groomed and dressed. He was alert, calm, oriented to time and place. His speech was clear and logical but contained some grandiose statements.

Lesner told Dr. Brauer that he spend his days working out, practicing karate, and playing World of Warcraft online in order to have someone to talk to. He has also tried to invent a magnetic forcefield to protect soldiers by wrapping wire around a screw. Lesner claimed that he manages money very poorly and would need his parents designated to assist him if he were granted funds.

Plaintiff reported auditory hallucinations, occasional visual hallucinations with grandeur delusions and suicidal thoughts but stated that as long as he is on his medication, he is not suicidal. He believed that people were always looking at him and stated he had concerns about being ugly and having facial tics.

Dr. Brauer noted that Lesner appeared to have poor concentration based on his performance on digit span and simple arithmetic. He performed well in his capacity for abstraction and retained the capacity for classification and categorization. According to Dr. Brauer, Lesner's symptoms "are consistent with a schizophrenic-type disorder, including hallucinations and delusions, with a long duration and significant impact on his social and occupational functioning." (R. 296.) Dr. Brauer ultimately concluded that in light of the coexistence of recurring depression with psychotic symptoms, Lesner met the criteria for schizoaffective disorder, depressive type.

### 3. Dr. Stone

Lesner appeared for mental status examination by a state examiner, Dr. Michael Stone, Psy.D, on May 18, 2010. Prior to the examination, Dr. Stone was able to review the evaluation performed by Dr. Brauer. Dr. Stone noted that

Lesner's behavior was mistrustful, serious, and intense throughout the examination, but he became more cooperative as his comfort level increased. Plaintiff was alert, oriented, appropriate and engaging, but his affect was significantly depressed and anxious with an agitated, dysthymic, and dysphoric mood. Lesner showed no significant hallucinations, paranoid delusional thinking, loose association, or flights of ideas. Lesner did, however, exhibit problems maintaining a consistent level of attention and concentration. At this examination, he was able to perform simple arithmetic calculations without difficulty. Dr. Stone found Lesner to be in the low average to average range of intellectual functioning. Lesner was diagnosed with dysthymic disorder with paranoid features, generalized anxiety disorder with panic attacks, schizoaffective disorder by history, and OCD by history. Dr. Stone concluded that Lesner would be unable to manage benefits if they were awarded.

### 4. Dr. Mehr

Non-examining state agency reviewer Dr. Joseph Mehr completed a Psychiatric Review Technique and Mental RFC Assessment on June 2, 2010 after reviewing Dr. Stone's report. Dr. Mehr opined that Lesner's symptoms appeared be exaggerated, given the history and current findings. Lesner was found to suffer from the following impairments: schizoaffective disorder by history, dysthymic disorder with paranoia, and anxiety disorder with panic disorder. Dr. Mehr concluded the impairments would moderately limit Lesner in the areas of activities

of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace, with no episodes of decompensation.

As for the Mental RFC, Dr. Mehr found moderate limitations in Lesner's ability to understand, remember, and carry out detailed instructions as well as the ability to interact appropriately with the general public, but no other significant functional limitations. Dr. Mehr concluded that Lesner is mildly anxious and somewhat paranoid and depressed. He is independent in his activities of daily living and retains the ability to remember general work procedures as well as to understand and remember instructions for simple, routine, repetitive tasks; his attention, concentration, pace, and endurance are sufficient to complete operations consistently at a rate expected in a work environment; he can maintain a schedule and be on time; Lesner would need only normal levels of supervision and numbers/lengths of rest breaks; he can relate appropriately with co-workers or peers, despite limited social tolerance resulting from his mild paranoia; he can adapt to changes in daily routines as well as be aware of and protect himself from common hazards.

### E. <u>Vocational Expert Testimony</u>

The ALJ asked Vocational Expert ("VE") Natalie Maurin whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") limiting him to simple, routine, and repetitive work that requires no more than occasional interaction with the general public, co-workers or supervisors could perform any of Plaintiff's past work, which

was semi-skilled. The VE said that the person could not, but other jobs would be available, including office cleaner (6,000 jobs in Illinois), industrial cleaner (1,000 jobs), housekeeping cleaner (8,000 jobs), laundry aide (5,000 jobs), cleaner/polisher (1,000 jobs), and assembly press operator (2,000 jobs). If the hypothetical person had the additional limitation of no more than occasional exposure to hazards such as moving machinery or unprotected heights, the assembly press operator position would be eliminated, but the others would remain available. If the person was limited to light work, the office cleaner and industrial cleaner would not be available. If the person would miss two or more days from work a month or need additional breaks, there would no jobs available.

### C.    ALJ Decision

The ALJ found at step one that Lesner had not engaged in substantial gainful activity since his alleged onset date of May 22, 2009. At step two, the ALJ concluded that Claimant had severe impairments of depression, anxiety, schizoaffective disorder, and obsessive-compulsive disorder. The ALJ concluded at step three that the impairments, alone or in combination, do not meet or medically equal a listing. The ALJ then determined that Claimant retained the RFC to perform the full range of work at all exertional levels, with certain non-exertional limitations. Specifically, the ALJ opined that Lesner was limited to simple, routine, repetitive work that requires no more than occasional interaction with the general public, co-workers, or supervisors. The ALJ concluded at step four that Lesner could not perform any of his past relevant work, which was assessed to be semi-skilled. At

step five, based upon the VE's testimony and Claimant's age, education, work experience and RFC, the ALJ concluded that Claimant can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

**DISCUSSION**

## I.    ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts

to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.  JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d

at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III.   ANALYSIS

Lesner argues that the ALJ's decision was in error because it: (1) failed to consider Dr. Brauer's opinion in determining whether Lesner met Listing 12.03; (2) improperly rejected the opinion of treating physician Dr. Miguel; (3) did not properly evaluate Lesner's credibility; and (4) relied on unreliable VE testimony.

### A.   <u>Listing 12.03</u>

Plaintiff first argues that the ALJ improperly failed to fully consider the opinion of Dr. Brauer in making her determination that Lesner did not meet the

criteria for Listing 12.03, which considers schizophrenic, paranoid, and other psychotic disorders. In order to meet the listing, there must be:

A.    Medically documented persistence, either continuous or intermittent, of one or more of the following:

1.    Delusions or hallucinations;

* * * *

AND

B.    Resulting in at least two of the following:

1.    Marked restriction of activities of daily living; or
2.    Marked difficulties in maintaining social functioning; or
3.    Marked difficulties in maintaining concentration, persistence, or pace; or
4.    Repeated episodes of decompensation, each of extended duration

* * * *

20 C.F.R. Pt. 404, Subpt. P, App. 1.

According to Plaintiff, Dr. Brauer's finding that "the criteria for schizoaffective disorder are met" necessarily means that he meets Listing 12.03. Dr. Brauer's diagnosis would certainly direct an ALJ to consider the criteria under Listing 12.03, but the diagnosis alone does not lead to the conclusion that the required criteria were met. Even assuming that Dr. Brauer's diagnosis and/or Lesner's reported hallucinations show the "A" criteria are met, Plaintiff offers no record evidence supporting the existence of the "B" criteria, as the listing requires. The ALJ reasonably relied on Dr. Mehr's report, which is adequately supported in the record and found only moderate restrictions on his activities of daily living, social functioning, and concentration, persistence, and pace. The ALJ was not

required to weigh the opinion of examining physician Dr. Brauer against that of non-examiner Dr. Mehr with respect to the "B" criteria, because Dr. Brauer's clinical findings make no mention of his limitations in functional categories, nor do they list repeated periods of decompensation. The Court concludes that substantial evidence supports the ALJ's finding that Lesner does not meet the Listing 12.03 criteria.

### B. <u>Treating Physician Rule</u>

Claimant next argues that the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of his treating physician, Dr. Miguel. The ALJ gave little weight to Dr. Miguel's opinion, finding that it was inconsistent with his treatment records.

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of

examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

The ALJ gave little weight to Dr. Miguel's opinion because she found it was inconsistent with his treatment records and concluded that Dr. Miguel's disability opinion (which was rendered after Lesner expressed an inability to find work) was based on sympathy rather than on his course of treatment. *See Butera v. Apfel*, 173 F.3d 1049, 1056 (7th Cir. 1999) (citation omitted) ("[T]his court has repeatedly stressed that 'a claimant's treating physician may be biased in favor of the claimant; bias that a consulting physician may not share . . . .'"). The Court need not determine whether Dr. Miguel was motivated by sympathy, however, because the ALJ also gave numerous examples of evidence supporting her conclusion that the opinion is inconsistent with the record as a whole. As stated above, Lesner remained on the same medications for a long period of time with good results reported. Moreover, although Claimant alleges he did not seek frequent treatment due to finances, Dr. Miguel generally did not even recommend that Lesner follow up more often than every six months. Dr. Miguel's GAF score was not consistent with his notation that Lesner was functional and should return to school. Similarly, the doctor's opinion that Lesner was entirely unable to meet competitive standards of work and would miss more than four days of work per month are not consistent with his recommendation of more schooling. The claims that Lesner would self-

injure is contradicted by the fact that he was often home alone while his parents are at work without incident.[3]

The fact that a different adjudicator may have made a difference decision based on the evidence is not a reason to overturn the ALJ's conclusion. The issue on review is whether there was sufficient evidence supporting the ALJ's decision not to give controlling weight to Dr. Miguel's opinion by showing that it is inconsistent with other substantial evidence in the record. The Court finds that there was, and thus her finding will not be disturbed.

### C.   Credibility

Plaintiff next assigns error to the ALJ's conclusion that Lesner's claims of wholly disabling symptoms were not credible. An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v.*

---

[3]  Interestingly, Lesner reported to Dr. Brauer that his psychiatrist, presumably Dr. Miguel, did not agree with the diagnosis of schizophrenia because "schizophrenics are more dysfunctional than you are." (R. 294.)

*Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). When evaluating a plaintiff's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see* SSR 96-7p at *3. When the claimant attends an administrative hearing, the ALJ "may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p at *5.

While the ALJ's credibility determination relied in part on the language sharply criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), the decision went beyond the boilerplate by stating that Lesner's credibility is undermined by his ability to work in the past despite his mental health symptoms; his reported state of well-being while on medication and when kept busy; his consistent medication regimen; his ability to limit his facial fixation to scheduled breaks; although he reported he could not afford more frequent treatment, he has required no hospitalization or emergency treatment; his treating physician has recommended no more than six-month follow-up visits; and his activities of daily living suggest an ability to remain focused when desired. The ALJ

also noted that Lesner's appearance, behavior, and demeanor at various medical examinations and the hearing were inconsistent with his allegations of severe symptoms. The Court finds that the ALJ's credibility finding was specific, based on substantial evidence in the record, and not patently wrong.

###    D.    Concentration, Persistence, and Pace

In determining Plaintiff's RFC, the ALJ noted Lesner's complaints of poor concentration, memory, and focus, and stated that a limitation to "unskilled work with only simple, routine and repetitive tasks required. . . . will accommodate these complaints." (R. 83.) Plaintiff argues that the ALJ erred by not including a specific limitation on concentration, persistence, and pace in the hypothetical question to the VE. The Seventh Circuit has held that "terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Although an ALJ is not required to use the specific terms "concentration, persistence, and pace," the phrasing used must account for the limitations found. *See id.* at 619.

The ALJ found, consistent with Dr. Mehr's opinion, that Lesner was only moderately limited in the areas of concentration, persistence, and pace. Even Dr. Miguel's more restrictive opinion did not find that Lesner was unable to meet competitive standards in that functional area. Plaintiff has not shown how his moderate limitations (as contrasted with the "significant problems" at issue in

*O'Connor*) are not accounted for in the RFC, which limited him to simple, routine tasks.

**E.**     **Unreliable VE Testimony**

Plaintiff next contends that the VE's testimony is unreliable, because she did not produce the source materials on which she relied in concluding that there were jobs Plaintiff could perform. At the hearing, Lesner's attorney asked for source material, and the VE responded that she used SkillTRAN's Job Browser Pro, but she only came to the hearing with the final numbers, not the source printouts. She did, however, provide counsel with a document showing how SkillTRAN obtains its numbers. During the hearing, Lesner's attorney lodged an objection to the VE's testimony regarding the numbers of jobs available.

"It is the Commissioner's burden at Step 5 establish the existence of a significant number of jobs that the claimant can perform." *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004). Although expert standards at an ALJ hearing are less stringent than those under the Federal Rules of Evidence, "an ALJ's findings must be supported by substantial evidence" and thus "an ALJ may depend upon expert testimony only if the testimony is reliable." *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions" *McKinnie v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004); *see Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

The Court agrees with the Commissioner that this case presents a different situation than that in *McKinnie*, where the VE gave vague responses when questioned about the foundation for her numbers. Here, the VE did provide the source of her numbers, namely SkillTRAN, publicly available labor market software. She was not relying solely on her personal experience or on any other untestable means. *See Smith v. Astrue*, No. 09 C 2392, 2010 WL 3526655, at *17 (N.D. Ill. Sept. 1, 2010). Ideally, a vocational expert would bring his or her data to the hearing for counsel's contemporaneous review, but in this instance, the VE's failure to do so does not warrant remand in this case.

**CONCLUSION**

For the foregoing reasons, Plaintiff John Christopher Lesner's motion for summary judgment [Doc. No. 19] is denied.

**SO ORDERED.**                                    **ENTERED:**

**DATE:**  **August 24, 2015**                  _____
                                                   **HON. MARIA VALDEZ**
                                                   **United States Magistrate Judge**